CHEHARDY, Chief Judge.
In these consolidated cases, Shawn Williams appeals a judgment of separation (case No. 88-CA-437) and a judgment of divorce (ease No. 88-CA-438) between him and his wife, Raylyn Reine Williams. The two judgments were rendered on March 24, 1988, within 10 minutes of each other.
In the first judgment, rendered at 3:30 p.m., appellant and his wife were judicially separated and found to be mutually at fault. Shawn Williams was ordered to pay child support in the amount of $650 per month for his infant daughter, whose custody had been assigned to the mother under a previous order. In the second judgment, rendered at 3:40 p.m., the parties were divorced and the previous orders of custody and support maintained.
(The divorce suit had been filed some months after the separation suit and alleged adultery against Shawn Williams. At the trial of both cases, the parties admitted neither was free from fault in the separation. The divorce was granted on the basis of the judicial separation, without mention of adultery.)
The only aspects of the judgments contested are the parts setting the amount of the child support payments. (The separation judgment also made a retroactive alimony pendente lite award of $500 per month to the wife, who was on a six-month maternity and sick leave when the parties separated. That award is not contested on appeal.)
Appellant contends the amount of the child support award is excessive. He asserts the trial court erred in failing to consider (1) the age of the child at the time of the award (nine months), (2) the infant’s lifestyle prior to the separation (the parents agreed to separate when the child was less than two months old), (3) the excessiveness of the expenses attributed to the child by the mother, and (4) the gainful employment of both spouses. He also asserts the court erred in considering his prior income and financial position in determining his ability to pay, when his ability to pay has been greatly reduced by a job change.
The transcript reveals the following facts:
The parties were married for five years. For eleven years preceding the institution of the separation action Shawn Williams had been an oyster fisherman, originally employed by Calvin’s Seafood, a business owned by his parents, Calvin and Elsie Williams. Shawn worked on two oyster luggers owned by his parents. Raylyn Reine Williams is a legal secretary employed by the Jefferson Parish Juvenile Court.
In March 1987, both the oyster boats, plus the leases to 900 acres of oyster beds, were transferred by Shawn’s parents to three corporations, each apparently having as its sole asset one of the transferred items: Captain Scott, Inc. (the M/V CAPTAIN SCOTT, valued at $55,000), Shawlyn, Inc. (the M/V SHAWLYN, valued at $181,-000), and Shawlyn Oysters, Inc. (the oyster leases, whose value Shawn estimated as $50,000-$60,000, although he admitted that *762 a year earlier he had valued them at $180,-000 on a loan application). Shawn and Ray-lyn are the sole owners of the shares in the corporations.
On August 20, 1987, Raylyn filed a petition for separation, with requests for ancillary orders. Approximately one month later, she filed an independent suit to place the three corporations in involuntary liquidation. Subsequently Raylyn was appointed liquidator of the corporations by the court.
Shawn’s and Raylyn’s 1986 joint federal income tax return showed a gross income for the oyster business, listed on the return as Shaw Lynn Oysters, in excess of $89,-000. After deduction of overhead expenses and depreciation, the return reflected the business had suffered a net loss of $21,645. (Shawn admitted, however, that the depreciation expense of $20,000 for the two boats was not an expense requiring a cash outlay.)
At the time of the March 1988 hearing, a 1987 return was not available. (Apparently none had been made, because the parties had been disputing over access to the corporation documents, which were in the possession of Shawn’s parents.)
Shawn admitted that, following the appointment of Raylyn as liquidator of the three corporations, he deliberately quit his job as captain of the oyster vessels because he refused to work for his wife, who he says knows nothing about the fishing industry. He remarked, “I like to conduct business on my own.” He also stated that the oyster business had been very bad due to pollution in the waters. He subsequently obtained a position as captain of a crew boat for another company, for which his net salary is $1,594 per month.
He listed his gross monthly income as $2,391.64 and his total monthly expenses as $2,429.98. One of the listed expenses was an automobile mortgage note of $182.74 per month, paid to Shawn’s father, for a pickup truck. Shawn testified the pickup truck was given to him by his father to use in the business and admitted that he had not begun making payments to his father for the truck until after he separated from Raylyn.
Questioned about the insurance premiums and payments on two bank notes shown on his expense list, Shawn admitted that, since the separation, he had been turning over his paycheck to his mother and she had been paying his bills through Calvin’s Seafood because it “has always been run as a family business.” He said his mother paid any debts for which he did not have enough money.
He stated he had paid $2,650 for child support since he and Raylyn had physically separated.
Testimony from Shawn, Raylyn, and Shawn’s mother established that Shawn received substantial amounts of cash from his parents. Prior to the parties’ physical separation, Raylyn handled the bank deposits for herself and Shawn. She testified the cash Shawn received from his parents was as much as $2,000 to $3,000 per month. After formation of the corporations Shawn was paid a salary of $2,400 a month by the corporations. He admitted that prior to the formation of the corporations he received income as he needed it from his parents’ business.
Shawn also testified that when the corporations were formed in March 1987, his parents turned over the boats and leases to the corporations but no money changed hands, although only he and Raylyn held shares in the corporations.
Raylyn’s position at the juvenile court pays her a net monthly salary of $901.99. In addition, at the time of the hearing she was owed six months of alimony pendente lite, giving her additional income for that period of $2,350 or approximately $392 per month. She listed her total net monthly income as $1,293.65 and her total monthly expenses as $3,691.44.
Raylyn’s expense list also listed community assets exceeding $370,000 — primarily the stock in the corporations, although the rights to these are currently being litigated between Raylyn on the one hand and Shawn and his parents on the other. Shawn’s statement, on the other hand, listed only $20,000 as community assets. (His *763 statement, unlike Raylyn’s, omitted the value of the stock in the three corporations.)
Raylyn listed her expenses for the baby as $200 for food, $76.50 for medical and dental expenses, $279.38 for clothing, $83.99 for health insurance, $433.08 for child care while she is at work, $27.30 for recreation, and $25.20 for gifts and donations, totaling $1,125.40.
She testified that Shawn’s salary after formation of the corporations was $2,400. She stated they would receive a check in that amount written on the corporate account and they also would receive cash, so they would have more money to live on.
Shawn’s mother, Elsie Williams, testified she was the bookkeeper for Calvin’s Seafood and that she had kept the books for the three corporations until Raylyn was appointed liquidator. Mrs. Williams testified there was very little cash received in the course of their businesses, but admitted that in the past she had given Shawn cash that had not been claimed as income on the corporate tax return. She stated she did not know how much money was involved. She also admitted that she and Shawn’s father, through Calvin’s Seafood, were paying some of Shawn’s bills for him.
In setting child support at $650, the trial judge stated, “There is a certain thing here called lifestyle, and he’s obligated to keep the child in the same lifestyle as it was when he was living with it. She is entitled to the same lifestyle.”
When Shawn asked the judge what would happen if he was out of work, the court, informed him,
“[If] worse comes to worst, you are subjecting yourself to 90 days in the parish prison.
# * * * ⅜ *
I suggest you find a way to get back into the oyster business. I suggest you find a way to maybe work out something.... [S]it down and get you back working these two boats.... You may not like the situation .... but you have another court ordering you.
[[Image here]]
You are making your own bed, in essence.”
On appeal Shawn has cited jurisprudence that states children of divorced parents are entitled to be maintained in the same standard of living as if they resided with the father whenever circumstances permit. See, e.g., Ducote v. Ducote, 339 So.2d 835 (La.1976). That phrasing is imprecise and appellant has misinterpreted it. The standard to be applied is correctly stated as follows: Children of separated or divorced parents are entitled to be maintained in the same manner as before- the separation or divorce, if the parents’ incomes permit. Bundick v. Dennison, 480 So.2d 458 (La.App. 3 Cir.1985).
Appellant made no attempt to prove that the expenses the mother listed for the child here did not comport with their former lifestyle. The real issue was whether appellant’s income would permit a continuance of that lifestyle. It is plain the trial judge either disbelieved Shawn’s testimony concerning his present sources of income and/or felt Shawn could make a better living were he to return to fishing the parties’ oyster boats as he had done before the liquidation suit.
Trial judges have wide discretion when setting alimony and child support payments and such awards will not be disturbed unless there is a clear showing of abuse of discretion. Gros v. Gros, 463 So.2d 37 (La.App. 5 Cir.1985), writ denied 464 So.2d 303 (La.1985).
Under the evidence here, we find no abuse of discretion manifest on the face of the record. Accordingly, we find no basis on which to disturb the amount of the child support award.
For the foregoing reasons, the judgment of the district court is affirmed. The costs of this appeal are assessed against the appellant.
AFFIRMED.